UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
:
UNITED STATES OF AMERICA,            :
:
    *Plaintiff,*                   :
:
    *v.*                          :  No. 1:24-cv-04291
:
MELINDA JACOB, Individually and      :
d.b.a. MELINDA JACOB TAX SERVICES,   :
LLC,                                 :
:
    *Defendants.*                 :
---------------------------------------------------------x

## COMPLAINT

Plaintiff United States of America, at the request of a delegate of the Secretary of the Treasury and at the direction of a delegate of the Attorney General, brings this civil action pursuant to 26 U.S.C. §§ 7402 and 7407 seeking a permanent injunction barring the defendant Melinda Jacob, individually and doing business as Melinda Jacob Tax Services, LLC, from engaging in the business of preparing federal tax returns, acting as a federal tax return preparer, owning, managing, or controlling any business engaged in tax return preparation, and employing any person acting as a federal tax return preparer. In support of its complaint, the United States alleges:

**Jurisdiction & Parties**

1. Jurisdiction exists under 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. §§ 7402 and 7407.

2. Venue is proper in this Court pursuant to 26 U.S.C. § 7407(a) and 28 U.S.C. § 1391(b) because Jacob prepared tax returns within this judicial district and a substantial part of the events giving rise to these claims occurred within this judicial district.

1

## Factual Allegations

3. Jacob began preparing returns while working at H&R Block for six years, including as a manager.

4. Jacob has no professional licenses or educational background in accounting or taxation.

5. On November 2, 2010, Jacob received a Preparer Tax Identification Number ("PTIN"), which is necessary for tax preparers who are compensated for preparing federal tax returns.

6. On August 29, 2011, Jacob received an Electronic Filing Identification Number ("EFIN"), from the IRS, which permits her to e-file federal tax returns.

7. In 2012, Jacob left H&R Block and started Melinda Jacob Tax Services, LLC.

8. Melinda Jacob owns and operates Melinda Jacob Tax Services, LLC, a tax return preparation business that was located at Jacob's residence in Brooklyn, New York. Upon information and belief, Jacob moved to Florida in 2022 and has also prepared returns for clients there.

9. Jacob has been preparing tax returns as a sole proprietor since 2012.

10. In each of the 2019-2023 processing years, Jacob prepared more than 500 returns.

11. Of the returns prepared by Jacob since 2019, the following percentages claimed tax refunds:

| Processing Year | Percentage of Returns Claiming Refund |
|---|---|
| 2019 | 97.6% |
| 2020 | 98.0% |
| 2021 | 96.3% |
| 2022 | 94.4% |
| 2023 | 97.4% |

12. On February 5, 2024, Melinda Jacob pleaded guilty in Case No. 1:24-cr-35-RER (E.D.N.Y.) (the "Criminal Case"), to aiding and assisting in the preparation of a false tax return, in violation of 26 U.S.C. § 7206(2). *See* Criminal Case, ECF Nos. 5-8, 11. Jacob also agreed, as part of the plea agreement, to consent in a separate civil action to be permanently enjoined from the preparation of tax returns for anyone other than herself under 26 U.S.C. §§ 7402 and 7407. Jacob understood that this agreement meant that the United States would file a civil complaint against her in district court seeking that relief, and that she would agree and consent to a permanent injunction in that lawsuit.

13. On March 12, 2024, the Court accepted Jacob's guilty plea. Criminal Case, ECF No. 13. Sentencing is scheduled for June 27, 2024. *See* Criminal Case, ECF No. 11.

## Jacob's Tax Preparation Schemes

14. Through Melinda Jacob Tax Services, LLC, Jacob prepares United States Individual Income Tax Returns Forms 1040 and associated Forms and Schedules for clients, which she submitted to the Internal Revenue Service on behalf of her clients.

15. Jacob prepares tax returns that falsely claim credits, deductions, or refunds for customers who otherwise would not be entitled to them, that inflate credits, deductions, or refunds for customers who would otherwise be entitled to lower credits, deductions, and refunds, or that falsely reduce her customers' income tax liabilities.

16. Jacob has multiple definable schemes to generate or inflate her customers' refunds.

*Residential Energy Credits*

17. Jacobs falsely claims residential energy credits on her customers' federal income tax returns.

18. The Internal Revenue Code provides a non-refundable tax credit to taxpayers who make certain energy-efficient improvements to their home. This credit is reported on a Form 5695 attached to a taxpayer's income tax return.

19. A taxpayer can receive the residential energy credit by purchasing certain clean energy property, such as solar equipment, wind turbines, and geothermal heat pumps. If taxpayers make such a purchase, they can reduce their taxable income by a percentage of the equipment costs.

20. Jacob regularly prepares false IRS Forms 5695 "Residential Energy Credits" ("REC") for customers who do not qualify for the credit.

21. These Forms 5695 falsely claimed that Jacob's customers had incurred costs for installing solar water heaters or geothermal heat pumps when, in fact, her customers had incurred no such costs. The false and fraudulent Forms 5695, as incorporated in the associated Forms 1040, resulted in Jacob's customers reporting to the IRS income tax amounts that were lower than their actual income tax due, resulting in either requests for greater refunds from the IRS than the taxpayers were entitled to receive, or claims to owe lesser amounts of taxes to the IRS than the taxpayers in fact owed.

22. As described below, Jacob regularly claimed false RECs on her customers' tax returns:

   a. Jacob prepared Customer 1 and Customer 2's 2018 individual income tax return. Customer 1 and Customer 2 are married and elected "married filing jointly

status." Customer 1 and Customer 2's 2018 tax return included a Form 5695 incorrectly claiming that they qualified for a $6,150 REC. Per the incorrect Form 5695, the REC was based on $14,000 worth of qualified solar water heating property costs and $6,500 in qualified geothermal heat pump property costs. However, Customer 1 and Customer 2 never had solar panels or a geothermal heat pump, and never discussed this with Jacob. Customer 1 and Customer 2 did not spend $14,000 on qualified solar water heating property or $6,500 on geothermal heat pump property, nor did they provide any receipts or supporting documentation to Jacob to substantiate the costs listed on Form 5695. Jacob fraudulently claimed a REC on Customer 1 and Customer 2's return anyway.

  b. Jacob prepared Customer 3's 2018, 2019, and 2020 individual income tax returns, each of which included a Form 5695 incorrectly claiming that Customer 3 qualified for RECs of $3,150, $2,010, and $3,536, respectively. Per the incorrect Forms 5695, the RECs were based on thousands of dollars in qualified solar water heating property costs each of the three years, along with thousands of dollars in qualified geothermal heat pump property costs in 2019 and 2020. However, Customer 3 did not spend any of the amounts listed on her Forms 5695, nor did she provide any receipts or supporting documentation to Jacob to substantiate the costs listed on the Forms 5695. Jacob fraudulently claimed each REC on Customer 3's returns anyway.

  23. In interviews with the IRS in 2022, Jacob admitted that not every customer for whom she included a Form 5695 with their return was entitled to the REC, and that she knew some customers were not entitled to the REC but included it on their return anyway.

24. The IRS estimates that as a result of Jacob's residential energy credit scheme, the IRS suffered an aggregate tax loss of more than $1,100,000 in 2019, 2020, and 2021 alone.

*Education Credits*

25. Jacob also claims bogus education expenses and falsely claims both nonrefundable and refundable education credits on customers' federal income tax returns. Unlike many tax credits, a refundable tax credit entitles qualifying taxpayers to receive a refund even if they have no tax liability.

26. 26 U.S.C. § 25A provides for two education credits, the American Opportunity Tax Credit and the Lifetime Learning Credit, which are available to taxpayers for qualified educational expenses for themselves and their dependents.

27. To qualify for an education credit, the taxpayer must pay qualified education expenses to an eligible educational institution for an eligible student listed on the taxpayer's tax return. An eligible student is the taxpayer, their spouse, or their dependent (listed on their tax return). Educational institutions use IRS Form 1098-T to transmit to students and the IRS the amount of the tuition and qualified education expenses billed and the amount of any scholarships or grants provided to the student.

28. Eligible taxpayers can claim a deduction for education credits on IRS Form 8863 "Education Credits (American Opportunity and Lifetime Learning Credits.)"

29. For returns that claim the American Opportunity Credit, tax preparers are required to complete IRS Form 8867 "Paid Preparer's Due Diligence Checklist." That checklist asks the tax preparer if the customer provided the IRS Form 1098-T or other documentation to substantiate that the customer qualifies for the refundable credit. The checklist is attached to the customer's federal tax return for filing.

30. As described below, Jacob regularly claimed false education credits on the tax returns of customers to generate a larger bogus refund:

   a. Jacob prepared Customer 4's 2019 and 2020 individual income tax returns, each of which included a Form 8863 falsely claiming that Customer 4 qualified for both refundable and nonrefundable education credits and a Form 8867 falsely asserting that Jacob had completed the required due diligence. Customer 4's 2019 Form 8863 claimed $905 in refundable education credits and $358 in nonrefundable education credits, based on alleged attendance at Touro College. Customer 4's 2020 Form 8863 claimed $687 in refundable education credits and $943 in nonrefundable education credits, also based on alleged attendance at Touro College. However, Customer 4 never attended Touro College, and never discussed including this as a credit in any way with Jacob. Neither of Customer 4's returns contain a Form 1098-T. Jacob fraudulently claimed each education credit on Customer 4's returns anyway.

   b. Jacob prepared Customer 5's 2019 individual income tax returns, which included a Form 8863 falsely claiming that Customer 5 qualified for both refundable and nonrefundable education credits and a Form 8867 falsely asserting that Jacob had completed the required due diligence. Customer 5's 2019 Form 8863 claimed $641 in refundable education credits and $962 in nonrefundable education credits, based on alleged attendance at Libi Manhattan Campus. However, Customer 5 never attended (and had never even heard of) Libi Manhattan Campus, and never provided Jacob this information or told Jacob about any education expenses.

Customer 5's return did not contain a Form 1098-T. Jacob fraudulently claimed the education credits on Customer 5's return anyway.

31. The IRS estimates that as a result of Jacob's education credit scheme, the IRS suffered an aggregate tax loss of more than $884,000 in 2019, 2020, and 2021 alone.

*Filing Status and Dependents*

32. Jacob also claims false filing statuses and includes bogus dependents on her customers' federal income tax returns, which fraudulently changes the tax rates and exemptions applicable to her customers.

33. A taxpayer's claimed filing status can have a significant effect on that taxpayer's total tax liability. For example, the tax rate for taxpayers filings as "Head of Household" is generally lower than for taxpayers filing as "Single," because the tax brackets are wider. Generally, a taxpayer must claim a dependent, among other requirements, to claim the Head of Household filing status.

34. The requirements for claiming a dependent are slightly different depending on which type of dependent is being claimed:

   a. To be a Qualifying Child, the child needs to be below the age of 19 (24 if a student), and not provide over half of his own support, among other requirements.

   b. To be a Qualifying Relative, there is no age limit. However, the taxpayer must be paying for over half of the individual's support, and the dependent must generally live with the taxpayer and bear a family relationship with the taxpayer.

35. Jacob included false dependents on customers' federal income tax returns, thereby improperly lowering their tax owed or increasing their refund or refundable credits.

36. Jacob sometimes included fictitious dependents who were either current or former inmates of the New York Department of Corrections (DOC), many of whom were not eligible to be claimed as dependents because they were incarcerated during the tax years in question.

37. As described below, Jacob claimed a false filing status and included bogus dependents on the tax returns of customers to generate a larger bogus refund:

    a. As discussed in paragraph 30(a), above, Jacob prepared Customer 4's 2020 individual income tax return, which improperly claimed one dependent. The dependent was a family friend of Customer 4's sister. Customer 4 did not know that this person was claimed as a dependent on his tax return, and does not know how the dependent got included on his tax return. Customer 4 did not have a dependent in 2020, but Jacob fraudulently included the dependent on Customer 4's tax return anyway.

    b. As discussed in paragraph 22(b), above, Jacob prepared Customer 3's 2020 individual income tax return, which improperly claimed two dependents. Customer 3 did not know the two people who were listed as dependents on her return and did not provide their information to Jacob. Customer 3 was not aware that someone with the name of one of the dependents was incarcerated in a New York state prison. Customer 3 did not have any dependents in 2020, but Jacob fraudulently included two dependents on Customer 3's return anyway.

38. The IRS estimates that, as a result of Jacob's filings status and dependents schemes, the IRS suffered an aggregate tax loss of more than $695,000 in 2019, 2020, and 2021 alone.

## HARM TO THE UNITED STATES – AND OTHERS

39. The false returns that Jacob prepared and filed have caused—and continue to cause—substantial harm to the United States by falsely reducing her customers' reported tax liabilities, helping customers avoid paying their fair share of tax, and producing refunds to which customers are not entitled.

40. Jacob's customers have been harmed because they paid Jacob fees to prepare proper tax returns, but instead Jacob prepared false and fraudulent returns that substantially underreported and underpaid the customers' correct tax liabilities, potentially exposing the customers to statutory penalties.

41. The United States has been harmed financially because it has not received, and may never collect, the taxes lawfully due and owing from Jacob's customers.

42. Jacob further harms the United States because the IRS must devote some of its limited resources to investigating Jacob's misconduct as a tax return preparer, including ascertaining her customers' correct tax liabilities, recovering any refunds erroneously issued, and attempting to collect any additional taxes and penalties, some of which may not be collectible.

43. In addition to the direct harm Jacob has caused the United States by preparing false and fraudulent tax returns, Jacob's activities undermine public confidence in the administration of the federal tax system and encourage noncompliance with the internal revenue laws.

44. Jacob also causes intangible harm to honest tax return preparers, over whom Jacob gains an unfair competitive advantage by preparing returns that falsely generate or inflate tax refunds for their customers. Customers who are satisfied with the tax refunds that they

receive—but who are often unaware of Jacob's illegal tax return preparation practices—return to Jacob for subsequent tax seasons.

**Count I: Injunction Under 26 U.S.C. § 7407 for Violations of 26 U.S.C. §§ 6694 and 6695 for Deceptive or Fraudulent Conduct that Interferes with the Administration of the Internal Revenue Code**

45. The United States incorporates by reference the allegations in all preceding paragraphs above, as though fully set forth herein.

46. 26 U.S.C. § 7407 authorizes a district court to enjoin any tax return preparer from further engaging in conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695, or any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws, if injunctive relief is appropriate to prevent the recurrence of such conduct. Section 7407 also authorizes a district court to enjoin any tax return preparer from further acting as a preparer.

47. 26 U.S.C. § 7701(a)(36) defines a "tax return preparer" as a person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return or a substantial portion thereof.

48. Jacob is a tax return preparer within the meaning of 26 U.S.C. § 7701(a)(36).

49. 26 U.S.C. § 6694(a) penalizes a tax return preparer if: (1) the preparer prepared a return or claim for refund that included an understatement of liability due to a position for which there was not substantial authority; and (2) the preparer knew (or reasonably should have known) of such position.

50. 26 U.S.C. § 6694(e) defines "understatement of liability" to include any understatement of tax due or "overstatement of the net amount creditable or refundable."

51. In violation of 26 U.S.C. § 6694(a), Jacob prepared returns that understated her customers' tax liabilities, and that she knew or should have known contained positions for which there was no substantial authority or reasonable basis.

52. 26 U.S.C. § 6694(b) penalizes a tax return preparer who prepares a return or claim with an understatement of liability: (1) in a willful attempt to understate the liability; or (2) with a reckless and intentional disregard of rules or regulations.

53. In violation of 26 U.S.C. § 6694(b), Jacob prepared tax returns for her customers that she knew or reasonably should have known understated her customers' liabilities and/or overstated her customers' refunds through, at least, her Filing Status Scheme.

54. 26 U.S.C. § 6695(g)(2) penalizes a tax return preparer who fails to comply with due diligence requirements with respect to determining eligibility for (or the amount of) the American Opportunity Tax Credit and the Lifetime Learning Credit

55. In violation of 26 U.S.C. § 6695(g)(2) Jacob routinely prepared returns claiming the American Opportunity Tax Credit and the Lifetime Learning Credit but failed to comply with due diligence requirements for those determinations.

56. An injunction against Jacob is necessary and appropriate to prevent the recurrence of this conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695.

57. Additionally, under 26 U.S.C. § 7407, if this Court finds that a return preparer has continually or repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695 or that substantially interferes with the proper administration of the internal revenue laws, and if this Court further finds that a narrower injunction prohibiting the enumerated conduct would not be sufficient to prevent further interference with the proper administration of the internal revenue

laws, this Court may enjoin that person from further acting as a federal income tax return preparer.

58. Given the variety, duration, and duplicity of Jacob's return preparation activities, anything less than a permanent injunction and complete bar on the preparation of tax returns for others is unlikely to stop Jacob from preparing false tax returns.

**Count II: Injunction under I.R.C. § 7402(a) for Unlawful Interference with Enforcement of the Internal Revenue Laws and General Appropriateness of Injunctive Relief**

59. The United States incorporates by reference the allegations in all preceding paragraphs above, as though fully set forth herein.

60. Pursuant to 26 U.S.C. § 7402(a), this Court is authorized to issue orders of injunction as may be necessary or appropriate to enforce the internal revenue laws.

61. 26 U.S.C. § 7402(a) expressly provides that its injunction remedy is "in addition to and not exclusive of" other remedies for enforcing the internal revenue laws.

62. Jacob's activities described above substantially interfere with the enforcement of the internal revenue laws because she prepares and files numerous false tax returns that result in customers not paying their true federal tax liabilities and receiving tax refunds they are not entitled to.

63. An injunction prohibiting Jacob from preparing or assisting in the preparation of tax returns is needed to stop her from preparing and filing false tax returns and to prohibit her from otherwise interfering with the proper administration and enforcement of the internal revenue laws. By contrast, Jacob will not suffer any cognizable harm by being enjoined from acting as a tax return preparer given that, when acting as a tax return preparer, she prepares false returns that harm the United States.

64. If Jacob is not enjoined, the United States will continue to suffer irreparable harm from the underpayment of taxes, the payment of refunds based on false tax returns and the exhaustion of resources to enforce the internal revenue laws. In addition, these actions by tax preparers such as Jacob undermine public confidence in the administration of the federal tax system and encourage noncompliance with the internal revenue laws.

65. The public interest would be advanced by enjoining Jacob because an injunction will stop her illegal conduct and the harm it is causing to the United States Treasury and the public.

66. An injunction is necessary and appropriate because the United States has no adequate remedy at law.

WHEREFORE, the United States seeks the following relief:

A. That the Court find that Jacob has continually and repeatedly engaged in conduct subject to penalty under I.R.C. § 6694 and § 6695; that, pursuant to I.R.C. § 7407, an injunction merely prohibiting conduct subject to penalty would be insufficient to prevent Jacob's interference with the proper administration of the tax laws; and that Jacob should be permanently enjoined from acting as a tax return preparer;

B. that the Court find that Jacob has interfered with the enforcement of the internal revenue laws and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to I.R.C. § 7402(a) and under the Court's inherent equity powers;

C. that this Court, pursuant to I.R.C. §§ 7402(a) and/or 7407, enter a permanent injunction enjoining Melinda Jacob, individually and doing business as Melinda Jacob Tax Services, LLC, her officers, agents, servants, employees, and attorneys, and anyone in concert or participation with Melinda Jacob, from directly or indirectly:

1. preparing or assisting in the preparation or filing, or directing the preparation, of federal tax returns, amended returns, and other related documents and forms for anyone other than herself;
2. advising, counseling, or instructing anyone about the preparation of a federal tax return;
3. owning, managing, controlling, working for, assisting or volunteering for an entity that is in the business of preparing federal tax returns or other federal tax documents or forms for other persons;
4. working or volunteering for a division of an entity in which that division is in the business of preparing federal tax returns or other federal tax documents or forms for other persons;
5. advertising tax return preparation services through any medium, including print, online, and social media;
6. maintaining, assigning, transferring, holding, using, obtaining, or renewing a PTIN or an EFIN;
7. representing any person in connection with any matter before the IRS;
8. employing any person to work as a federal tax return preparer to prepare returns for someone other than herself;
9. providing office space, equipment, or services for, or in any other way facilitating, the work of any person or entity that is in the business of preparing or filing federal tax documents or forms for others or representing persons before the IRS;

10. referring any person to a tax preparation firm or a tax return preparer, or otherwise suggesting that a person use any particular tax preparation firm or tax return preparer;

11. selling, providing access, or otherwise transferring to any person some or all of the proprietary assets of Jacob's generated by her tax return preparation activities, including, but not limited to, customer lists; and,

12. engaging in any conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695 or engaging in any other conduct that substantially interferes with the administration and enforcement of the internal revenue laws;

D. that the Court, pursuant to I.R.C. §§ 7402(a) and/or 7407, enter an order requiring Melinda Jacob to prominently post at all physical locations where she conducts any type of business, at her own expense and within 30 days of the Court's order, a copy of this order of permanent injunction, as well as a sign (with dimensions of at least 12 by 24 inches) saying as follows: "Melinda Jacob, individually and doing business as Melinda Jacob Tax Services, LLC, will no longer be serving as federal tax return preparers, per Court order";

E. that the Court, pursuant to I.R.C. §§ 7402(a) and/or 7407, enter an order requiring Jacob to prominently post an electronic copy of the permanent injunction on any website or social media site or social media profile that Jacob maintains or creates over the next five years, so long as that profile was or is used to advertise tax preparation services;

F. that the Court, pursuant to I.R.C. §§ 7402(a) and/or 7407, enter an order requiring Jacob to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, social security number, address, email address, and telephone

number and tax period(s) all persons for whom Jacob prepared federal tax returns or claims for a refund, for tax years beginning with 2019 and continuing through this litigation;

G. that the Court, pursuant to I.R.C. §§ 7402(a) and/or 7407, enter an order requiring Jacob, within 30 days of receiving the Court's order, to email, if an email address is known, or otherwise send by U.S. mail to, all persons for whom Jacob has prepared federal tax returns, amended tax returns, or claims for refund since January 1, 2019, as well as all employees or independent contractors Jacob has hired since January 1, 2019, a copy of the order of permanent injunction, with no other text, enclosures, or attachments unless approved in writing by the Department of Justice, and a copy of the complaint setting forth the allegations as to how Jacob fraudulently prepared federal tax returns;

H. that the Court, pursuant to I.R.C. §§ 7402(a) and/or 7407, enter an order requiring Jacob, within 45 days of receiving the Court's order, to file a declaration, signed under penalty of perjury, confirming that Jacob has received a copy of the Court's order and is in compliance with the terms described in Paragraphs C through G of this Complaint;

I. that this Court permit the United States to conduct post-judgment discovery to ensure Jacob's compliance with the permanent injunction;

J. that this Court retain jurisdiction over Jacob and over this action to enforce any injunction entered against her;

K.  that this Court grant the United States such other and further relief as the Court deems appropriate.

>
> Respectfully submitted,
>
> DAVID A. HUBBERT
> Deputy Assistant Attorney General
>
> */s/ Claire A. Shimberg*
> SAMANTHA S. LIEB
> CLAIRE A. SHIMBERG
> Trial Attorneys, Tax Division
> U.S. Department of Justice
> P.O. Box 55
> Washington, D.C. 20044
> (202) 616-2901 (Lieb)
> (202) 305-3197 (Shimberg)
> (202) 514-5238 (f)
> Samantha.Lieb@usdoj.gov
> Claire.Shimberg@usdoj.gov

Of Counsel:

BREON S. PEACE
United States Attorney